# United States Court of Appeals
# for the Federal Circuit

TRANSTEX INC. FKA TRANSTEX COMPOSITE INC.,
*Appellant,*

*v.*

LAYDON COMPOSITES LTD., WABCO HOLDINGS INC.,
*Cross-Appellants,*

ANDREI IANCU, Under Secretary of Commerce for
Intellectual Property and Director of the United
States Patent and Trademark Office,
*Intervenor.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Proceeding No. IPR2018-01319

## CORRECTED RESPONSE AND REPLY BRIEF OF APPELLANT

John Caracappa
Scott Richey
Bill Toth
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

FILED: December 1, 2020
ORIGINALLY FILED: October 26, 2020

Robert Kappers
STEPTOE & JOHNSON LLP
227 W Monroe St. Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1300
Facsimile: (312) 577-1370

*Counsel for Appellant,*
*Transtex Inc. fka Transtex Composite*
*Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 20-1576, 20-1624

**Short Case Caption** Transtex Inc. v. WABCO Holdings Inc.

**Filing Party/Entity** Transtex Inc.

---

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/01/2020

Signature: /s/ John Caracappa

Name: John Caracappa

i

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Transtex Inc. | Transtex Inc. | Gestion MB5 Inc. |
| | Transtex LLC | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

ii

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable      ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable      ☐ Additional pages attached

| Transtex LLC . v. WABCO Holdings 2:17-cv-12793-SJM (EDMI) | 20-1140 Transtex Inc. v. WABCO Holdings Inc. |  |
|---|---|---|
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable      ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# **TABLE OF CONTENTS**

Certificate Of Interest.............................................................................. ii

Table Of Authorities ............................................................................. vii

Summary Of The Argument ...................................................................1

Argument................................................................................................3

I.   The Board Erred In Determining That Claims 1, 5–11, And 15–19 Were Obvious.......................................................................................3

     A.   WABCO Has Shown No Motivation To Modify Layfield with Rinard...........................................................................................3

         1.   Layfield And Rinard Were Not Drawn To The "Same Problem" .................................................................................4

         2.   WABCO Offered Only Conclusory Assertions Of A Motivation To Improve Layfield With Rinard .............................................8

         3.   The Board's Rejection Of Transtex's Arguments Did Not Cure Its Errors ...................................................................................13

     B.   WABCO Has Not Overcome The Board's Erroneous Finding Of A Reasonable Expectation Of Success ...................................................13

         1.   Neither The Board Nor WABCO Explained Why (Or How) A Skilled Artisan Would Have Modified Layfield With Rinard .14

         2.   No Substantial Evidence Supported The Board's Finding Of An Expectation Of Success.............................................................16

         3.   Layfield And Rinard Did Not Address The "Same Problem," And Their Scant Commonalities Do Not Substantiate An Expectation Of Success.............................................................19

         4.   The Board's Discussion Of Transtex's Arguments Did Not Provide An Affirmative Basis For Its Conclusions .................20

     C.   No Substantial Evidence Supported The Conclusion That Layfield's Struts Were Tapered ......................................................................22

     D.   Dependent Claims..............................................................................23

     E.   Layfield Did Not Anticipate ............................................................24

II.  In The Alternative, Remand Under *Arthrex* Is Warranted ........................28

    A.  Transtex Did Not Forfeit Its Appointments Clause Challenge ........28

    B.  *Caterpillar* Should Not Control ........................................................29

    C.  Transtex's Appointments Clause Challenge Should Not Be Held In Abeyance ...................................................................................30

III.  The Board Correctly Rejected WABCO's Obviousness Challenge To Claims 2–4 And 12–14 ...................................................................31

    A.  Claims 2 And 12 Are Not Unpatentable ..........................................31

        1.  The Board Correctly Applied The Broadest Reasonable Interpretation Of The Claim Language .....................................32

        2.  WABCO's Proposed Construction Improperly Broadens The Claims ...........................................................................33

    B.  Claims 3, 4, 13, And 14 ..................................................................35

Conclusion And Statement Of Relief Sought ........................................................38

Certificate Of Service ..............................................................................................40

Certificate Of Compliance .......................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
  949 F.3d 1366 (Fed. Cir. 2020) ...................................................26, 27

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  941 F.3d 1320 (Fed. Cir. 2019) ......................................28, 29, 30, 31

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  953 F.3d 760 (Fed. Cir. 2020) ........................................................30

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  No. 19-1204, 2020 WL 5882232 (U.S. Oct. 5, 2020) ......................31

*Bosch Auto. Serv. Sols., LLC v. Matal*,
  878 F.3d 1027 (Fed. Cir. 2017) ......................................................22

*Callicrate v. Wadsworth Mfg., Inc.*,
  427 F.3d 1361 (Fed. Cir. 2005) ......................................................26

*Caterpillar Paving Products v. Wirtgen America, Inc.*,
  957 F.3d 1342 (Fed. Cir. 2020) ................................................29, 30

*Chamberlain Grp., Inc. v. One World Techs., Inc.*,
  944 F.3d 919 (Fed. Cir. 2019) .........................................................8

*Ciena Corp. v. Oyster Optics, LLC*,
  958 F.3d 1157 (Fed. Cir. 2020) ......................................................29

*Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*,
  936 F.3d 1353 (Fed. Cir. 2019) ......................................................24

*In re Gleave*,
  560 F.3d 1331 (Fed. Cir. 2009) ......................................................28

*In re ICON Health & Fitness, Inc.*,
  496 F.3d 1374 (Fed. Cir. 2007) ......................................................33

*In re Inland Steel Co.*,
   265 F.3d 1354 (Fed. Cir. 2001) ...............................................3, 19, 20

*In re Lee*,
   277 F.3d 1338 (Fed. Cir. 2002) ...................................................15, 16

*In re Morris*,
   127 F.3d 1048 (Fed. Cir. 1997) .............................................................33

*In re NuVasive, Inc.*,
   842 F.3d 1376 (Fed. Cir. 2016) ...................................................13, 15

*In re Suitco Surface, Inc.*,
   603 F.3d 1255 (Fed. Cir. 2010) .............................................................33

*In re Van Os*,
   844 F.3d 1359 (Fed. Cir. 2017) .......................................................3, 9, 10

*In re Van Os*,
   No. 2013-004862, 2015 WL 2412230 (PTAB May 19, 2015) .......................9

*Insite Vision Inc. v. Sandoz, Inc.*,
   783 F.3d 853 (Fed. Cir. 2015) ..............................................................6

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001) ..............................................................8

*Koninklijke Philips N.V. v. Google LLC*,
   948 F.3d 1330 (Fed. Cir. 2020) ...................................................16, 17

*KSR Intern. Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007).........................................................................6, 7

*Merck & Cie v. Gnosis S.P.A.*,
   808 F.3d 829 (Fed. Cir. 2015) .......................................................1, 3, 21

*Merck & Co. v. Teva Pharms. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005) .............................................................33

*Oren Techs., LLC v. Proppant Express Investments LLC*,
   No. 20-1146, Dkt. No. 34 (Fed. Cir. May 18, 2020) ...................21, 31

*Personal Web Technologies, LLC v. Apple, Inc.*,
 848 F.3d 987 (Fed. Cir. 2017) ...............................................11, 12, 13

*PGS Geophysical AS v. Iancu*,
 891 F.3d 1354 (Fed. Cir. 2018) ...........................................................4

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) .........................................33, 34, 36

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
 815 F.3d 747 (Fed. Cir. 2016) .........................................................26

*Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*,
 75 F.3d 1568 (Fed. Cir. 1996) ...........................................................5

*Ruiz v. A.B. Chance Co.*,
 357 F.3d 1270 (Fed. Cir. 2004) .................................................1, 4, 5

*TQ Delta, LLC v. Cisco Sys., Inc.*,
 942 F.3d 1352 (Fed. Cir. 2019) .......................................................22

## Other Authorities

37 C.F.R. § 42.100(b) .......................................................................34

Federal Circuit Rule 28(j) ..................................................................3

# SUMMARY OF THE ARGUMENT

The Board found claims 1, 5–11, and 15–19 of the '017 patent obvious over Layfield in view of Rinard. But the Board failed to establish a motivation for combining the references or that the combination would have expected to achieve the claimed invention. *See* Blue Br. at 25–36. No substantial evidence supports either prerequisite for a finding of obviousness.

In response, WABCO attempts to fill gaps in the Board's reasoning with new, inapposite theories and attorney argument driven by hindsight. For example, WABCO advances a "same problem" theory based on *Ruiz* and an "implied finding" theory based on *Merck*. Red Br. at 31–33, 44–46. Neither applies.

Recognizing the lack of substantial evidence and legal support, WABCO turns to waiver. But the record supports no such arguments.

WABCO's alternative grounds for affirmance—anticipation by Layfield— seeks to import teachings with no grounding in the reference. WABCO argues that the materials and construction disclosed would be understood to result in the claimed invention. Layfield did not expressly disclose or suggest the claimed "resilient struts," yet WABCO insists the Board erred by finding WABCO failed to prove inherency.

In the alternative, the Court should remand this case for consideration by a panel of administrative patent judges subject to the proper supervision of a

constitutionally appointed officer. The Board's decision rested on the same reasoning it had already issued in a prior decision—not subject to the proper supervision—concerning a combination of the very same references against a patent in the same family.

WABCO's cross-appeal arguments lack merit. WABCO argues that the Board erred in using the common meanings for the terms "'U' shaped" and "concave" found in dependent claims 2–4 and 12–14. But WABCO's petition did not propose a special meaning for those terms. Nor did its expert provide any analysis as to why Layfield—which taught a box-shaped strut—would fall within the scope of the dependent claims; he simply assumed a nonexistent equivalence. Instead, WABCO offers attorney argument, attacking the Board's understanding of grammar and dissecting dictionary entries. Those arguments did not overcome the evidence before the Board, and they are no more persuasive here.

The Board's finding of unpatentability as to claims 1, 5–11, and 15–19 of the '017 patent should be reversed. In the alternative, the case should be remanded for consideration by a properly supervised panel. The Board's finding that claims 2–4, 12–14, and 20 are not unpatentable should be affirmed.

# ARGUMENT[1]

## I. The Board Erred In Determining That Claims 1, 5–11, And 15–19 Were Obvious

### A. WABCO Has Shown No Motivation To Modify Layfield With Rinard

The Board failed to establish a motivation for modifying Layfield with Rinard to achieve the invention claimed by the '017 patent. The lack of evidence and inapposite citations to case law in WABCO's brief underscore the Board's failure to provide an "articulated rationale" for finding that a skilled artisan would have been motivated to modify Layfield according to Rinard to arrive at the claimed invention. *In re Van Os*, 844 F.3d 1359, 1361 (Fed. Cir. 2017). For example, WABCO could not legitimately dispute that the Board failed to articulate supporting facts, so instead, WABCO insists that the Board's decision can be upheld as long as "its path may reasonably be discerned" from underlying factual

---

[1] Many of WABCO's arguments duplicate the arguments in its opposition brief in the companion case, No. 20-1140, as to related issues between the cases. Pursuant to Federal Circuit Rule 28(j), Transtex advises that portions of its reply are similarly duplicative of its reply brief in the companion case, with modifications due to differences between the records, for clarity, and to comply with word count requirements.

WABCO also advanced new or modified arguments on certain common issues between the cases, and so this brief includes portions with no analogue in the companion case, including responses to WABCO's arguments about: the Board's reference to "minor modifications," *see* Appx41 n.22, *Inland Steel*, *Merck*, the Board's citation of the reexamination of a different patent against a different reference, and anticipation.

determinations. Red Br. at 30–31 (quoting *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1365 (Fed. Cir. 2018)). But the only discernible "path" is hindsight. This warrants reversal.

WABCO's attempt to reconstruct the Board's reasoning rests on two faulty premises: that Layfield's skirt-panel support struts and Rinard's air-scoop supports addressed the "same problem," *see* Red Br. at 31–32; and that a skilled artisan would have been driven to modify Layfield by the bare pursuit of improved flexibility. No substantial evidence supported either position.

### 1. Layfield And Rinard Were Not Drawn To The "Same Problem"

Unsatisfied with what the Board wrote, WABCO seeks to rescue the decision by asserting that a motivation to combine teachings may come from the "nature of the problem addressed by both references." Red Br. 31. WABCO repeatedly insists that Rinard and Layfield addressed the "same problem." *E.g.*, Red Br. at 32, 33, 37. According to WABCO, that constituted substantial evidence supporting a motivation to combine. Red Br. 32 (citing *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276–77 (Fed. Cir. 2004)). Before this appeal, neither WABCO nor the Board ever raised *Ruiz*, the decision WABCO now cites, or the "nature of the problem." Neither applies.

In *Ruiz*, the district court found (and the Federal Circuit affirmed) that the references in question all addressed "the ***narrow problem*** of underpinning existing

building foundations," so "a person seeking to solve *that exact same problem* would consult the references and apply their teachings together." *Ruiz*, 357 F.3d at 1277 (emphases added). That is not this case.

To the extent Layfield and Rinard addressed the exact same problem—"providing *panels* with 'sufficient flexibility' to bend when encountering objects," as WABCO insists, Red Br. at 19 (citation omitted) (emphasis added)—Rinard expressly taught a *rigid* side-skirt assembly and support structure. Appx820 (6:16–32) ("a substantially rectangular box-like structure," "preferrably [*sic*] of a rigid material"). So that aspect of Rinard could not have motivated the combination nor supplied the element missing from Layfield. WABCO instead directed the Board to Rinard's discussion of a *different* problem—compressible air scoops at the top and bottom of the trailer. That was not what *Ruiz* contemplated.

*Pro-Mold*, on which *Ruiz* relied, further elucidates the flaws in WABCO's theory. There, the combination involved two baseball-card holders. *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1572 (Fed. Cir. 1996). One was larger than the card; the other was about the same size as the card. The nature of the subject matter involved—the card to be enclosed—established a motivation that was "evident from the very size of the card itself." *Id.* at 1573. Here, the secondary reference *solved a different problem*—how to make a monolithic compressible air scoop. Appx815 (Figures 10, 11); Appx820 (6:3–6). The

motivation to turn to Rinard for teachings about how to modify Layfield's rigid struts so they could flex and resume their position was anything but self-evident.

WABCO did not present this "nature of the problem" theory to the Board, so the Board never addressed it. The Board did, however, cite from *KSR* that a technique may be obvious if a skilled artisan would recognize it "would improve similar devices in the same way . . . ." Appx43 (quoting *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 417 (2007)). WABCO contends that the Board found the "similarity" contemplated by *KSR* "by noting that both were flexible trailer components . . . ." Red Br. at 34 (citing Appx41–43). That is, WABCO argues that a skilled artisan would have looked to *anything* flexible on a trailer to improve Layfield—without regard to the nature of the problems they solve. That smacks of hindsight. *See Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 859 (Fed. Cir. 2015) ("Defining the problem in terms of its solution reveals improper hindsight in the selection of the prior art relevant to obviousness.").

WABCO ignores critical technical differences between the relevant components in Layfield and Rinard.[2] Layfield's skirt is large and designed to hang from the bottom lateral edges of a trailer to less than a foot from the road. Appx780 (9:9–35). Rinard's ***air scoops*** are small, attached to the top and bottom of a trailer,

---

[2] Applying WABCO's "nature of the problem" theory at such a broad level would also effectively vitiate the motivation requirement. A sufficiently broad articulation of a problem could encompass nearly any two references.

and they compress or collapse into the trailer—like the seal on a refrigerator door. Appx822 (10:20–50). These were not "similar devices" that could be improved "in the same way." *See* Appx43 (citation omitted).

WABCO contends the Board considered the "particular shape of Rinard's air scoops" and whether the combination was "mere application of a known technique to a piece of prior art ready for improvement." Red Br. at 35 (quoting *KSR*, 550 U.S. at 417). WABCO's failure to cite any consideration of the "shape of Rinard's air scoop" is telling. Indeed, Rinard taught *nothing* about the specific material or construction of the relevant element of the scoop structure. Rinard taught constructing vertical supports made from some unspecified "resilient material" in an unspecified way "so that they may collapse . . . ." Appx822 (10:43–50). Nor did the Board elucidate Rinard's specific teachings, much less explain why WABCO's combination involved the application of a known technique. The Board simply asserted it. Appx43.

Contrary to WABCO's assertion of waiver, Transtex raises no new arguments. The dissonance between the references has been a recurring theme of Transtex's defense of the '017 patent. *E.g.*, Appx1505 (¶ 165) (explaining that the arcuate and vertical support elements of Rinard "are fundamentally different" form struts for a skirt panel). WABCO's contention that Transtex waived discussion of the specific evidence of that dissonance on the face of the references is meritless.

*See, e.g., Chamberlain Grp., Inc. v. One World Techs., Inc.*, 944 F.3d 919, 924 (Fed. Cir. 2019) (explaining waiver does not preclude a litigant from "merely clarifying its earlier position"); *cf. Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001) ("[A]rguments that are based on a specification in evidence and that are in support of an existing claim construction are not barred by the doctrine of waiver for the sole reason that they were not first presented to the trial court."). WABCO offered no factual basis for resolving these differences upon combining the references.

### 2. WABCO Offered Only Conclusory Assertions Of A Motivation To Improve Layfield With Rinard

WABCO contends that the Board made "explicit findings" supporting a motivation to combine. Red Br. at 33. Specifically, WABCO asserts that Rinard not only "provide[d] an obvious solution," but that it provided an obvious solution that served the goal of Layfield, namely, "to absorb greater impacts without having to be repaired or replaced." Red Br. at 24; *see also* Red Br. at 35 (quoting Appx43–44). That is exactly the kind of conclusory language this Court has found inadequate, and neither WABCO's reply brief cited by the Board nor the testimony

cited therein supplied substantial factual support. *See* Appx1855; Appx1008–1009 (¶¶ 191–193).[3]

WABCO alleges that *Van Os* is of no help to Transtex. Red Br. at 33. But WABCO ignores the underlying facts animating that decision. In sum, testimony merely stating that a combination would have provided an intuitive way to achieve the goals of the primary reference, "is no different [from] merely stating the combination 'would have been obvious.'" *Van Os*, 844 F.3d at 1361–62. Indeed, the underlying Board decision provided lengthy detail about the goals of the primary reference:

> One of ordinary skill in the art would have recognized that Gillespie's technique of entering a user interface reconfiguration mode in response to a user sustaining a touch in proximity to an icon displayed on the touchscreen would be an intuitive way for users of Hawkins' device to enter into the editing mode in which they could rearrange the icons corresponding to applications on the interface.

*In re Van Os*, No. 2013-004862, 2015 WL 2412230, at *4 (PTAB May 19, 2015). There, the challenger stated it would have been "intuitive" to use a specific prior art element to achieve the specific goals of the prior art, thereby arriving at the claimed invention. That was not enough. *Van Os*, 844 F.3d at 1361–62. Nor was WABCO's proffered testimony.

---

[3] As discussed *infra* at 17, WABCO's citation of Appx1260, *see* Red Br. at 48, is inappropriate. It is not substantial evidence at all, much less of the obviousness of these claims in view of this combination.

WABCO also pointed to paragraph 196 of Mr. Tres's testimony. Red Br. at 36–37 (citing Appx1010–1011 (¶ 196)). That testimony was indistinct from the inadequate testimony in *Van Os*. As there, Mr. Tres merely identified elements to be combined and asserted they would yield the predictable result of meeting the claim language. He did not explain *how*.

The Board's erroneous view of the record is evident from its statement that use of resilient materials was "encouraged by Rinard's disclosure . . . ." *See* Appx41. Not even Mr. Tres suggested that Rinard encouraged use of resilient materials for the supports of other trailer components. Rather, Mr. Tres only offered the bare conclusion that "a skilled artisan would have recognized" that Layfield could obtain the benefits "as disclosed in Rinard . . . ." Appx1009–1010 (¶ 194). The Board stretched that conclusory testimony beyond its bare conclusions.

Rinard itself had no specific teachings about the construction of the air scoops—apart from the figures—nor about the material to be utilized. Rinard only suggested using a generic, unspecified "resilient material." Appx822 (10:43–50). And that resilient material was for *an entirely different component*. There was no basis for the Board to conclude that Rinard encouraged the use of resilient materials in the construction of a trailer-skirt support strut.

WABCO next raises "the remainder" of Mr. Tres's testimony and "the record as a whole" but still fails to offer any substantial factual support. Red Br. at 37. Rather, WABCO reverts to circular reasoning, asserting that the references were "aimed at solving the same problem as in the '017 patent." Red Br. at 37 (citing Appx1008–1009). Nothing in the cited testimony provided substantial evidence that a skilled artisan would have been motivated to combine the *different* teachings of the references.

It is no defense that the rest of Mr. Tres's testimony "relied on the teachings from the references themselves . . . ." Red Br. at 37 (citing Appx1008–1009 (¶ 192) (quoting Appx82 (2:5–7)). Conclusory analysis that referred to the prior art is still conclusory.

WABCO also attempts to distinguish Mr. Tres's testimony from the rejected testimony in *Personal Web Technologies, LLC v. Apple, Inc.*, 848 F.3d 987, 993– 94 (Fed. Cir. 2017). WABCO describes *Personal Web* as addressing testimony merely stating that two references "*could* be combined," without more, in purported contrast to Mr. Tres's testimony. *See* Red Br. at 39–40. The language in question in *Personal Web* is instructive:

> The Board's most substantial discussion of this issue merely agrees with Apple's contention that a "person of ordinary skill in the art reading Woodhill and Stefik would have understood that the combination . . . *would have allowed for* the selective access features of Stefik to be

> used with Woodhill's content-dependent identifiers feature."

*Id.* at 993 (citation omitted). That is, the challenger nominally went beyond the bald assertion that the references could be combined by identifying specific elements to be used for particular purposes in the proposed combination. But the challenger never explained "*how* the combination of the two references was supposed to work"—a "prerequisite" to finding a motivation to combine them. *Id.* at 994. That was fatal. *Id.*

Similarly, Mr. Tres never explained how the combination was supposed to work. The paragraph WABCO cites to defend Mr. Tres's testimony is equally telling:

> In my opinion, even without the reasoning discussed in Rinard, a person of ordinary skill in the art at the time of the earliest effective filing date of the '017 patent would have found it obvious to use a resilient material to construct the Layfield strut and panel to enhance the ability of the Layfield panel to have "sufficient flexibility to bend when the rig maneuvers over objects, e.g. curbs, railway tracks, below grade loading docks, etc."

Appx1011 (¶ 198) (quoting Appx781–782 (12:67–13:4)); *see also* Red Br. at 40 (citing Appx2446 (¶ 47)). In essence, Mr. Tres said no more than that a skilled artisan would have known that these elements *could be* combined, without explaining *how* or *why*. That "does not imply a motivation to pick out those two

12

references and combine them to arrive at the claimed invention." *Personal Web*, 848 F.3d at 993–94. It is hindsight.

### 3. The Board's Rejection Of Transtex's Arguments Did Not Cure Its Errors

WABCO characterizes the Board's rejection of Transtex's arguments as affirmative support. Red Br. at 41 (citing Appx42). Far from making "well-supported factual findings," Red Br. at 29, the Board simply recited WABCO's position before rejecting Transtex's position. Critically, WABCO needed to prove that a skilled artisan would have been motivated to combine the references in the first place *even though* both Layfield and Rinard taught flexible lower extension panels hanging below the rigid trailer skirt panels—with rigid supports.

*NuVasive*, then, is on point. Neither WABCO nor the Board supplied an affirmative basis for finding a motivation to combine the references. The Board's rejection of Transtex's arguments cannot rescue the Board from its error. *In re NuVasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016) ("[I]t is not adequate to summarize and reject arguments without explaining why the PTAB accepts the prevailing argument.") (citation omitted).

### B. WABCO Has Not Overcome The Board's Erroneous Finding Of A Reasonable Expectation Of Success

WABCO does not meaningfully defend the Board's written reasoning for finding an expectation of success. Instead, WABCO offers additional explanation

and attorney argument to bolster the Board's scant analysis. Neither WABCO's explanation nor its cited evidence supplies the requisite substantial evidence.

1. **Neither The Board Nor WABCO Explained Why (Or How) A Skilled Artisan Would Have Modified Layfield With Rinard**

The Board stated that a skilled artisan "would have a reasonable expectation of success" in making the proposed combination "for the reasons proposed by" WABCO. Appx43. The Board cited WABCO's conclusory argument that "[a]pplying this solution would yield the predictable result" of allowing Layfield's fairing to absorb greater impacts. Appx43–44 (quoting Appx1855, in turn citing Appx1260). WABCO nevertheless contends that the Board adequately articulated why a skilled artisan would have expected success. Red Br. at 42. But the mere assertion does not make it so.

The Board repeatedly noted that "resiliency of the struts is based upon the material from which they are made and their construction." Appx22 (citations and internal modifications omitted). But neither WABCO nor the Board offered any detail about the material selection or the construction of the proposed combination that would have effected resiliency. Indeed, Rinard mentioned a generic "resilient material," but taught nothing about the material or the construction of the air-scoop supports, much less how to adapt those teachings for a trailer-skirt support strut.

With no such explanation in the record, WABCO repeatedly relies on the Board's statement that the proposed combination involved only "minor modifications." *See, e.g.*, Red Br. at 43 (quoting Appx41 n.22). But WABCO fails to identify any substantial evidence explaining what the proposed modifications *were*, much less why a skilled artisan would have believed that modifying Layfield's rigid trailer-skirt support strut to use unspecified resilient materials and construction of Rinard's monolithic collapsing air scoops would have been "minor."[4] Indeed, the Board highlighted the rigidity of Layfield's struts in rejecting WABCO's anticipation argument. Appx26 (citing Appx784 (18:40) and Appx778 (6:48–49)). Neither the Board nor WABCO explained how a vague modification at odds with those key characteristics of Layfield could have been "minor"—only hindsight supplies the explanation.

Contrary to WABCO's assertion, Red Br. at 44, *In re Lee*, 277 F.3d 1338 (Fed. Cir. 2002), and *In re NuVasive, Inc.*, 842 F.3d 1376 (Fed. Cir. 2016), are directly on point. Both make plain the Board's obligation to provide an adequate administrative record explaining its reasoning and the evidentiary basis for its

---

[4] Both the Board's reference to "minor modifications" and WABCO's citations bear on the motivation to combine, not the expectation of success. *See* Red Br. at 42 (citing Appx41 (citing Appx1853–1854 (citing Appx822 (10:43–50), Appx1008–1011 (¶¶ 192–196, 198), Appx2444 (¶ 45)))). All are conclusory and fail to provide substantial evidence support at all, much less for the proposition that these unspecified modifications would have been expected to succeed.

conclusions. *See In re Lee*, 277 F.3d at 1342; *cf.* Red Br. at 44. The Board failed to meet that obligation.

### 2. No Substantial Evidence Supported The Board's Finding Of An Expectation Of Success

WABCO attempts to manufacture a theory based on paragraph 197 of Mr. Tres's report. *See* Red Br. at 43. In that paragraph, Mr. Tres offered the conclusory assertion that a skilled artisan would have expected success in the proposed combination "as the materials already were disclosed by Layfield." Appx1011 (¶ 197). But Mr. Tres never explained what "the materials" were. He couldn't— Rinard did not disclose specific materials at all. Indeed, the Board laid plain its error when it relied on "the resilient materials disclosed in . . . Rinard" without citation. Appx41 n.22.

WABCO also cites the Board's conclusions at Appx42–43 for the assertion that it relied on the references themselves and expert testimony as substantial evidence of the expectation of success. *See* Red Br. at 48–49 (citations omitted). Not so. The portion of the Board's decision that WABCO cites concerns the motivation to combine.

WABCO's citation of *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1339 (Fed. Cir. 2020), is similarly misplaced. *See* Red Br. at 44. That decision stands for the general proposition that the Board can rely on expert testimony and the prior art to support a finding of a reasonable expectation of

success. *Id.* But here, the relevant teachings concerned completely distinct components with distinct purposes, and WABCO's expert never explained how or why a skilled artisan would expect the designs for a monolithic collapsible air scoop would transfer to a support strut for a trailer skirt. Instead, he merely offered the ultimate conclusion. Appx1012–1013 (¶ 202). *Koninklijke Philips* does not sanction such conclusory testimony.

WABCO insists that "[c]onsideration of Rinard in the reexamination of a parent application of the '017 patent confirms that a skilled artisan would have understood Rinard to disclose" the claimed resilient supports. Red Br. at 48 (citations omitted). But the primary reference considered in the reexamination, Dolan, materially differed from Layfield. Blue Br. at 35–36. Dolan's struts were already considered resilient, and so all that was needed from Rinard, in the examiner's view, was to modify the strut so that it could resume its initial position after deforming. Appx1298 (4:26–29). That was a narrower and more precise modification than WABCO's proposed combination. Indeed, it demonstrates that, at least in that examiner's view, general resiliency did not require the ability to resume an initial position, as required by the claims.

Moreover, the consideration of Rinard in the reexamination is evidence only that *an examiner* once held the positions stated therein—positions that were overcome, mooting the rejection. *See* Appx1260; Appx1879–1882. It is not

substantial evidence of obviousness, much less for this different combination of prior art. WABCO offers no legal basis for considering an examiner's mooted rejection as substantial evidence.[5] It defies reason.

WABCO's insistence that Transtex waived this argument is misplaced. WABCO cited the reexamination consideration of Dolan as unexplained support for the proposition that applying Rinard to Layfield would have yielded predictable results, and it raised that oblique argument for the first time in its *reply* before the Board. *See* Appx1855.

Far from waiving, Transtex has persistently argued that WABCO offered no support for the conclusion that a skilled artisan would have expected to succeed in achieving the claimed invention by modifying Layfield according to Rinard's air-scoop teachings. *E.g.*, Appx1420. Moreover, Transtex *did* argue to the Board (via cited expert testimony) that Dolan's and Layfield's struts could not be treated interchangeably as to resiliency. *See* Appx1408 (citing, *inter alia*, Appx1506 (¶ 164) (explaining that the Examiner's analysis of Dolan was not determinative of resiliency in Layfield)).

---

[5] WABCO seems to *agree* that the reexamination of the '471 patent should not be considered: WABCO takes issue with Transtex's discussion of the reexamination as factual background, even as it argues the mooted opinions of the examiner should be considered as substantive evidence of obviousness. *See* Red. Br. at 16.

### 3. Layfield And Rinard Did Not Address The "Same Problem," And Their Scant Commonalities Do Not Substantiate An Expectation Of Success

The Board's findings and WABCO's arguments concerning the expectation of success collapse into conclusory allegations stemming from the "same problem" framework. *See supra* at Section I.A.1. But the teachings of Rinard relied on did not address the same problem. WABCO continues to rely on bare conclusions—driven by hindsight—to draw Rinard's teachings on air scoops into the same category as Layfield's teachings on trailer skirts.

WABCO's reliance on *Inland Steel* highlights the ill fit of this case to the "same problem" framework. *See* Red Br. at 44 (citing *In re Inland Steel Co.*, 265 F.3d 1354, 1364 (Fed. Cir. 2001)). Even by WABCO's own words, that decision is inapposite: WABCO describes the prior art there as "identif[ying] a problem and ***provid[ing] express guidance on how to fix the problem*** . . . ." Red Br. at 44 (citations omitted) (emphasis added). Here, neither reference provided express guidance on how to fix the problem presented by a rigid trailer-skirt support strut. Rather, the Board expressly found that "Layfield does not contain any express disclosure concerning the flexibility of the struts. Nor does Layfield include any discussion about the desirability of strut flexibility." Appx26. Far from express guidance, the Board found a complete *absence* of guidance or even a suggestion

the rigid supports were a problem. And, to be sure, Rinard taught rigid supports for the trailer skirt too. Appx820 (6:16–32).

Moreover, the *Inland Steel* decision rested not only on "express guidance" as WABCO describes it, but on guidance explicitly tying the specific element of the primary reference to be modified to the key disclosure of the secondary reference. 265 F.3d at 1364 ("In sum, the prior art references identify a common problem (improving magnetic properties), and one of the references gives a specific example of a single critical parameter (the addition of antimony) and gives explicit guidance tying that parameter to the key parameter of another reference (steel prepared without hot-band annealing).").[6] The analogue here would be a teaching in Layfield explicitly suggesting that a trailer-skirt support strut could be improved based on the teachings of an air scoop support structure. Layfield included no such teaching. Nor did Rinard.

### 4. The Board's Discussion Of Transtex's Arguments Did Not Provide An Affirmative Basis For Its Conclusions

Finding no support in the Board's affirmative findings on the expectation of success, WABCO suggests that the Board's decision can be supported by

---

[6] It is of no moment that other references in *Inland Steel* warned against using excessive amounts of one component in the proposed combination. 265 F.3d at 1363. *Inland Steel* overcame that teaching away because of the express link between teachings in the primary and secondary references. Here, by contrast, the teachings are *dissonant* as to the flexibility of the trailer-skirt assembly.

implication from its rejection of Transtex's arguments. Red Br. at 44–45 (citing *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829 (Fed. Cir. 2015)). Not so.

*Merck* addressed a purely mechanical issue: whether the Board needed to "ma[k]e an *express* finding" of an expectation of success—it did not. *Id.* at 836 (emphasis added). But Transtex has never argued that the Board erred by failing to make an explicit finding. Transtex's argument has always been that the Board's finding, whether express or implied, was unreasoned and unsupported by substantial evidence. *Merck* offers nothing regarding the substantiality of the evidence presented. WABCO's citation of *Merck* is a mere strawman, and it underscores that WABCO cannot point to substantial evidence supporting an expectation of success.

Nor did the Board's explanations for rejecting Transtex's arguments support WABCO's affirmative position, impliedly or otherwise. Rather, the Board focused on Transtex's argument concerning whether Layfield's skirt panels were rigid, but it never engaged in any affirmative analysis regarding why a skilled artisan would have expected success in applying Rinard's scant teachings on air scoops to Layfield's trailer-skirt support struts. Appx43. And to be sure Transtex advanced arguments that did not rest on the rigidity or resiliency of Layfield's skirt panel. *See, e.g.*, Appx1419 ("In fact, the 'resilient' element in Rinard . . . has nothing to do with trailer skirts . . . ."). The Board never addressed how or why a skilled

artisan would have resolved the dissonance between Rinard and Layfield. Its failure to do so is fatal.

### C. No Substantial Evidence Supported The Conclusion That Layfield's Struts Were Tapered

As discussed on Transtex's opening brief, the Board's finding that Layfield taught a strut tapered to affect the strut's resiliency lacked substantial evidence. Red Br. at 36–39.

WABCO responds that Transtex waived the argument. Red Br. at 48–51. Untrue. WABCO bore the burden of establishing that the combination of Layfield and Rinard rendered the challenged claims unpatentable. *See, e.g.*, *Bosch Auto. Serv. Sols., LLC v. Matal*, 878 F.3d 1027, 1040 (Fed. Cir. 2017). The Board, in turn, had a duty to articulate its reasons, supported by substantial evidence, for adopting WABCO's position. *See TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1357–58 (Fed. Cir. 2019). Transtex had no obligation to present WABCO's arguments and evidence or to provide the Board sufficient reasoning.

WABCO's substantive response also fails. Indeed, it cites portions of the record even WABCO admits the Board did not consider as support for its decision. *See* Red Br. at 52 (citing Appx972–975 (¶¶ 104, 107–108)), and they do not offer substantial support. Indeed, portions of those paragraphs discuss theories that the Board rejected, such as Mr. Tres' assumption that Layfield's struts are "U" shaped.

### D. Dependent Claims

WABCO offers little more than lengthy string cites and a waiver argument to support its position that substantial evidence supported the Board's conclusions of obviousness as to the key elements of the dependent claims. *See* Red Br. at 53–54 (citations omitted).

The Board's errors regarding the independent claims also pervaded its findings as to dependent claims 5–6, 8–10, 15–16, and 18–19. Moreover, the Board fell far short of its obligation to articulate its reasoning for adopting WABCO's positions as to claims 6, 8–10, 16, and 18.

WABCO's waiver argument misses the point. *See* Red Br. at 39–40. It was WABCO's burden to prove unpatentability of the challenged claims, including claims 6, 8–10, 16, and 18. Transtex's decision not to assert any specific argument as to those claims neither absolved WABCO of that burden nor absolved the Board of its obligation to articulate reasoning based in substantial evidence. The Board's conclusion of obviousness "based on the reasons and evidence set forth" in WABCO's papers, fell far short of its obligations. Appx63.

The Court should reverse the Board's obviousness determinations as to dependent claims 5–6, 8–10, 15–16, and 18–19.

### E. Layfield Did Not Anticipate

WABCO argues that the Board erred in finding Layfield did not anticipate the challenged claims. But WABCO misunderstands the law and misstates the Board's findings.

Anticipation exists "only if each and every element of the claim is expressly or inherently disclosed in a single prior art reference." *Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1363 (Fed. Cir. 2019) (citations omitted). WABCO argued that Layfield expressly disclosed the claims and WABCO unequivocally disclaimed inherency.[7] Appx27; Appx1845–1846; Appx2688–2690 ("this is not a case of inherency").

WABCO argues that a skilled artisan would have known that the intrinsic properties of Layfield's materials would "cooperate together" with the extrinsic properties of its construction to result in a resilient strut. Red Br. at 59. That argument does not turn on whether a skilled artisan would "reasonably understand or infer" that the element is *disclosed* in the reference. It turns on whether the claim arises as a result of the other teachings in the reference. That is precisely the question addressed by inherency. *See, e.g.*, *Guangdong Alison*, 936 F.3d at 1364 ("An element may be inherently disclosed only if it is 'necessarily present', not

---

[7] Because WABCO disclaimed inherency, Transtex does not address it here. Transtex nevertheless agrees with the Board's finding that Layfield did not inherently disclose resilient struts.

merely probably or possibly present, in the prior art." (citations omitted)). That WABCO studiously avoids the words "inherently" and "necessarily" to describe its theory does not compel otherwise.

Each premise that WABCO advances lacks merit. First, WABCO asserts that the Board invoked a "straw man" inherency theory that "unnecessarily colored the analysis . . . ." Red Br. at 55. But WABCO—not the Board—raised the theory by presenting an argument based on how intrinsic and extrinsic properties of Layfield might behave, a question of fact for which there was competing evidence. *See* Appx27. The Board was correct to address WABCO's nominal theory of express disclosure as well as the theory it essentially presented, inherent disclosure.

Second, WABCO asserts that the Board's decision to not construe "resilient strut" means that the Board adopted WABCO's proposed construction. Red Br. at 55. That is nonsensical. Had the Board adopted WABCO's proposed construction, it would have said so. It did not. Appx11 ("[W]e need not construe 'resilient strut' and 'resilient support' expressly.").

WABCO wrongly alleges that "Transtex waived its proposed claim construction." Red Br. at 55. Transtex argued that the Board need not construe "resilient strut" to decide WABCO's invalidity arguments but also offered an alternative construction. Appx10–12. The Board agreed with Transtex and did not construe the term. Appx11. Accordingly, Transtex waived nothing.

WABCO's argument hinges on its unreasonable construction that "any nominal deformation" of a strut suffices because Layfield is entirely silent about strut flexibility. That improper construction would lead to absurd results, such as encompassing struts made entirely of ordinary glass or steel, the latter of which was considered in prosecution. Thus, it would improperly read out any resiliency of the claimed "resilient strut." *See, e.g.*, *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747, 755 (Fed. Cir. 2016) ("A construction which reads the preferred embodiment out of the scope of the claims would generally seem at odds with the intention of the patentee as expressed in the specification."); *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1369 (Fed. Cir. 2005) (finding error for reading out a limitation required by the claim language and specification).

Third, WABCO argues that strut resiliency could have been inferred from Layfield's teachings of materials and construction. Red Br. at 55–58. But WABCO's cited authority, *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1373–74 (Fed. Cir. 2020), offers no support. There, the challenger's expert explained that a prior art reference expressly disclosed a claim limitation for CDMA[8] where it described, among other things, "spread-spectrum radio communication." *Id.* at 1374. The expert testified that a skilled artisan would

_____

[8] CDMA, or code-division multiple access, is a mobile-phone standard "where all users are allowed to transmit simultaneously utilizing the same available frequency band." *See Acoustic Tech.*, 949 F.3d at 1369.

recognize the passages about "spread-spectrum" to describe CDMA although that specific term, CDMA, was not used. *Id.* That is not this case.

Here, there is no legitimate claim that Layfield taught anything synonymous with a resilient strut, much less the claimed "resilient strut" that is "adapted to sustain an elastic deformation . . . and to self-recover the resilient strut original shape." Appx87 (11:15–33).

WABCO contends that the Board "overlooked" Layfield's teaching of resiliency "by virtue of [its struts'] chemical and mechanical properties arising from the material choice, the construction, and the connection of the Layfield strut to the trailer." Red Br. at 58 (citation omitted). But the Board considered and discussed both at length. *See* Appx23–30. The Board simply disagreed with WABCO, "in light of the full record . . . , that Layfield expressly teaches [or inherently discloses] a 'resilient strut' as recited by claim 1." Appx30. WABCO further contends a skilled artisan would have known the teachings of Layfield would "cooperate together" to result in a resilient strut. Red Br. at 46–47. Here too, WABCO is simply unhappy with the Board's factfinding. For one, the Board found the relevant evidence "contradictory." Appx28. For another, the Board found that Layfield's disclosures of strut configurations "highlight[] the bracing and reinforcement features" of the strut, not any kind of resiliency or flexibility. Appx26.

Fourth, WABCO alleges the Board acknowledged the impropriety of an "*ipsissimis verbis*" test but applied it anyway. Red Br. at 58 (citations omitted). Not true. The Board found "no express statement that Layfield's strut is resilient ***or otherwise exhibits a characteristic*** synonymous with resiliency." Appx27 (emphasis added). The Board thus properly searched Layfield for the concept of a resilient strut, rather than specific wording, and found none.

WABCO's reliance on *Gleave* is misplaced. Red Br. at 58 (citing *In re Gleave*, 560 F.3d 1331 (Fed. Cir. 2009)). That decision stands for the general proscription on *ipsissimis verbis* tests. *See Gleave*, 560 F.3d at 1334. The Board did not apply such a test, and *Gleave* does not suggest otherwise.

Lastly, WABCO argues that the Board "misapprehended the evidence" describing the resiliency of the Layfield strut, citing Mr. Tres's testimony about "the combination" of material and construction. Red Br. at 59 (citing Appx960 (¶ 76) and Appx971 (¶ 101)). But the conclusory testimony fails to identify any express disclosure of resilient struts and falls far short of providing a factual basis for concluding that resiliency would have inherently arisen.

## II. In The Alternative, Remand Under *Arthrex* Is Warranted

### A. Transtex Did Not Forfeit Its Appointments Clause Challenge

WABCO and the Director both contend that Transtex forfeited relief under *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), by

declining to raise its objection before the Board. WABCO further contends that Transtex "should have asked the Patent Office for a new panel" to remedy the procedural infirmities. Red Br. at 61. Such a request would have been futile. Those positions are inconsistent with *Arthrex* itself. *Id.* at 1340.

The Director and WABCO argue that this case warrants a departure from *Arthrex* because Transtex raised the issue as alternative relief. Red Br. at 61–62; Green Br. at 5–8. That makes no sense. Appellate review is not a complete substitute for properly supervised review in the first instance. A properly supervised panel would have made fresh findings of fact, with the burden of proof resting with WABCO. Unlike the appellant-petitioner in *Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157, 1161–62 (Fed. Cir. 2020), Transtex never sought the Board's review.

### B. *Caterpillar* Should Not Control

WABCO and the Director contend that *Caterpillar Paving Products v. Wirtgen America, Inc.*, 957 F.3d 1342 (Fed. Cir. 2020), forecloses this challenge. But this case meaningfully differs from *Caterpillar*.

In *Caterpillar*, the patent owner sought remand by virtue of the fact that "a year's worth of constitutional violations influenc[ed] the Board's thinking and conclusions." *Id.* at 1343. The Court cited language in *Arthrex* and in Judge Moore's concurrence in denial of rehearing of the case, both indicating that

*Arthrex* would only apply to decisions where final decisions had issued. *Id.*

(quoting *Arthrex*, 941 F.3d at 1340; *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953

F.3d 760, 764 (Fed. Cir. 2020) (Moore, J., concurring in denial of rehearing)). But

neither statement was necessary to the holding of *Arthrex*.

Even so, this case warrants departure from *Caterpillar*. Here, not only had

the Board done months of improperly supervised preparatory work, but this very

panel of APJs had already formed and promulgated its opinions about this exact

combination of references on a related patent prior to the issuance and remedy of

*Arthrex*. The differences in the treatment of common issues (such as the motivation

to combine Layfield and Rinard) are minor and insubstantial. Neither WABCO nor

the Director identifies any material difference between how the panels addressed

the common issues. The fact that WABCO recycled significant swaths of its brief

from the companion appeal to defend the Board's decision here underscores the

extent to which the Board repeated its errors.

The eleventh-hour supervision by a constitutionally appointed officer under

*Arthrex* was insufficient to cure the procedural and substantive errors this panel of

APJs had already made in the prior proceeding and prepared to repeat here.

### C. Transtex's Appointments Clause Challenge Should Not Be Held In Abeyance

WABCO and the Director ask the Court to defer on any relief under *Arthrex*.

Red Br. at 64–65; Green Br. at 8–9. Neither request should be granted. District

court litigation is stayed pending these proceedings, and so the interest of efficiency is served by moving forward.

The Director's citation of the order granting a stay in *Oren Techs., LLC v. Proppant Express Investments LLC*, No. 20-1146, Dkt. No. 34 (Fed. Cir. May 18, 2020), offers no support. That motion was unopposed, and that order rested on bare "consideration" of the motion. The Supreme Court's decision to review *Arthrex*, does not counsel otherwise. *Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 19-1204, 2020 WL 5882232 (U.S. Oct. 5, 2020). *Arthrex* remains binding law in this circuit.

## III. The Board Correctly Rejected WABCO's Obviousness Challenge To Claims 2–4 And 12–14

The Board correctly found that dependent claims 2–4 and 12–14 of the '017 patent are not unpatentable, either in view of Layfield or in combination with Rinard. *See* Appx65. For at least the reasons below, the Board was correct in that finding.

### A. Claims 2 And 12 Are Not Unpatentable

WABCO contends that the Board erred in finding that Layfield did not teach a "resilient strut [that] defines a 'U' shaped section," as required by dependent claims 2 and 12. Red Br. at Appx66–69. There was no error in that finding. Rather, the Board came to the unexceptional conclusion that the claimed resilient strut requires some portion that is U-shaped, meaning that it has a curvature. Appx16–18. And because Layfield's strut is "box-shaped (meaning the base and vertically

31

extending legs meet at essentially right angles),” Appx18, the Board concluded that Layfield did not teach the claim element. Appx46–47.

### 1. The Board Correctly Applied The Broadest Reasonable Interpretation Of The Claim Language

To be clear, the Board found that “[t]here is no dispute that ‘U’ shaped section literally means a section in the shape of a ‘U.’” Appx18 (internal quotations omitted). The intended shape is clear as the letter U on this page; it has at least some curvature. Appx18; *see also* Appx1371–1372, Appx1413–1414; Appx2565–2566, Appx2581–2582.

The ’017 patent’s disclosure reinforces the correctness of the Board’s findings on claims 2 and 12. The patent’s disclosure only uses “‘U’ shaped” to mean in the shape of a U. Appx86 (10:28–37). In particular, Figure 9B shows the U-shaped portion (element 41, highlighting added) of the otherwise planar resilient strut (element 42).



**FIG. 9B**

Accordingly, the commonly understood meaning of "'U' shaped" is the "broadest reasonable construction consistent with the specification." *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1259 (Fed. Cir. 2010) (quoting *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007)); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

The Board's understanding of the claim term was reasonable and should be affirmed. *Suitco Surface*, 603 F.3d at 1259 (citing *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997)).

### 2. WABCO's Proposed Construction Improperly Broadens The Claims

WABCO premises its argument about claims 2 and 12 on an unreasonably broad interpretation of "'U' shaped section." Appx16. In particular, WABCO argues that the claimed "'U' shaped section" should be construed to mean "any three-sided 'U' shaped section." Red Br. at 66. But WABCO fails to articulate why "any three-sided" U shape is within the scope of the claim term or consistent with the specification of the '017 patent. WABCO simply assumes it.

WABCO's proposal to modify the claim language improperly broadens the U shape limitation into meaninglessness. *See, e.g.*, *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."). For example, either "any three-sided 'U' shaped section" must be in the shape of a

U—rendering WABCO's added language superfluous—or that proposed construction allows "any three-sided" shape—rendering the U superfluous.

WABCO's reliance on federal regulations and *Cuozzo* is misplaced. Red Br. at 66. For example, the federal regulations at the time of the *inter partes* review required the Board to give claim language "its broadest reasonable construction *in light of the specification*." 37 C.F.R. § 42.100(b) (emphasis added). The Board did precisely that. Based on the ordinary meaning of U-shaped and the descriptions of U-shaped in the disclosure of the '017 patent, the Board reached the unremarkable conclusion that the claimed "U has a curvature . . . ." Appx18. And *Cuozzo* is only relevant here in that the Supreme Court in that decision affirmed the authority of the United States Patent and Trademark Office to promulgate Section 42.100.

WABCO also cites *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). But *Phillips,* to the extent it is applicable here, supports the Board's decision, not WABCO's argument. Where the ordinary meaning of "'U' shaped section" is readily apparent, as here, *Phillips* counsels applying "the widely accepted meaning of commonly understood words." *Id.* at 1314. That is consistent with the Board's finding.

This is not a case where the claim term has a special meaning to skilled artisans. *Phillips*, 415 F.3d at 1312. As the Board found, "[t]here is no dispute that 'U' shaped section literally means a section in the shape of a 'U.'" Appx18. And

while WABCO cites its expert's testimony, Mr. Tres did not analyze the construction of "'U' shaped section." Red Br. at 66 (citing Appx976–977; Appx2431–2432). He, like WABCO, simply assumed that Layfield's struts are "U" shaped. They are not.

Lastly, WABCO bore the burden of showing that Layfield's box-shaped strut was the same as the claimed U-shaped strut. WABCO failed to propose a special construction and it failed to sufficiently show why a box shape is within the scope of the claim language. But also, as the Board found, neither Mr. Tres nor WABCO proposed modifying Layfield to include a "'U' shaped section." *See* Appx47. Nor did they provide any analysis of the effect of modifying Layfield to include such an element. And as discussed above with regard to anticipation by Layfield, WABCO has repeatedly argued that both the materials and the construction of a strut impacts its ability to flex. Red Br. at 54–59. In short, WABCO's argument was always doomed.

## B. Claims 3, 4, 13, And 14

Dependent claims 3 and 13 each require that "the resilient strut has ***a substantially rectangular section*** including ***a concave portion*** adapted to increase the stiffness of the resilient strut." Appx87 (11:26–28) (emphasis added). The Board found that a "'concave portion' requires a curved or rounded inward portion" and that WABCO failed to identify "a curved or rounded inward portion

in Layfield's strut." Appx16, Appx49. But the Board did not reach the question of whether Layfield taught "***a substantially rectangular section***" that includes some concave portion—whatever the construction of concave—perhaps because the broadest reasonable interpretation of concave was dispositive. Appx47–49.

WABCO contends that the Board's interpretation of "concave portion" was in error and departed from the broadest reasonable interpretation of the term. Red Br. at 70. WABCO then leaps to the erroneous conclusion that the dependent claims are obvious or anticipated. Red Br. at 73. WABCO is wrong.

First, while a reversal of the Board's construction of "concave portion" is necessary for WABCO's position, it is not sufficient. The Board's factfinding stopped short of determining whether Layfield taught the "substantially rectangular section." Tellingly, WABCO's Red Brief at page 69 quotes claim 3 but omits that language with an ellipsis:

> wherein the resilient strut has . . . a concave portion adapted to increase the stiffness of the resilient strut.

Second, the Board properly adopted plain meaning of "concave portion" as the broadest reasonable interpretation. The Board noted that the claim "terms 'concave' and 'concave portion' are not recited elsewhere in the Specification of the '017 patent and are not illustrated in any of the figures." Appx16. Accordingly, *Phillips* would favor applying the common meanings to these ordinary words. *Phillips*, 415 F.3d at 1312. That is what happened.

36

Specifically, the Board looked to WABCO's extrinsic evidence, a dictionary entry for the lay meaning of "concave." Appx16; Appx2451 (WABCO's Ex. 1056). The Board considered the two definitions of "concave":

1: hollowed or rounded inward like the inside of a bowl

2: arched in : curving in

Appx16; Appx2451. The Board also found the testimony of Transtex's expert, Dr. Micklow, to be consistent with "concave" meaning "rounded or curved inward." Appx16. Any meaning requires some curvature.

WABCO argues that the Board misread the dictionary definition, and that the first definition is really two separate definitions. Red Br. at 70–71. Nothing of the sort. The first definition is not "1. hollowed" and "2. rounded inward like the inside of a bowl," as WABCO contends. Rather, it is a single definition explaining that concave is bowl-like, whether hollowed or rounded inward.

Further, the second definition from the dictionary is informative for two reasons. It further suggests that the common meaning of concave involves something arched in or rounded in. And it shows that where a single definition is divided into separate definitions, the dictionary uses punctuation to separate them: "2: arched in : curving in." Thus, WABCO's arguments about whether the first definition uses a conjunctive or a disjunctive function word is without merit. Red Br. at 71.

Lastly, the Board considered the claim language and the '017 patent's disclosure, as well as the extrinsic evidence. The Board did not, however, consider testimony of WABCO's expert, Mr. Tres, on the meaning of "concave." He offered none. Rather, Mr. Tres assumed in his testimony that Layfield's struts included a concave portion, but he did not analyze the term or opine on its construction. Ultimately, the Board was not convinced by WABCO's attorney arguments. Nor should this Court be persuaded to overturn the Board's adoption of the plain and ordinary meaning of "concave" for the broadest reasonable interpretation.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, the Court should reverse the Board's finding that claims 1, 5–11, and 15–19 of the '017 patent are unpatentable. And the Court should affirm the Board's findings that claims 2–4, 12–14, and 20 are not unpatentable.

In the alternative, the Court should remand the case for determination by a new panel subject to the supervision of inferior officers required by the Constitution.

Dated: December 1, 2020          */s/ John Caracappa*
                                  John Caracappa
                                  Scott Richey
                                  Bill Toth

STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

Robert Kappers
STEPTOE & JOHNSON LLP
227 W Monroe St. Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1300
Facsimile: (312) 577-1370

*Counsel for Appellant*
*Transtex Inc. fka Transtex Composite*
*Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 1st day of December, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which thereby served a copy upon all counsel of record via email or electronic means.

Upon notification of the Court indicating paper copies are requested, the required number of copies of the brief set by Clerk will be sent to the Court via Federal Express, priority overnight, within the time provided in the Court's instructions.

Dated: December 1, 2020 /s/ John Caracappa

John Caracappa
Scott Richey
Bill Toth
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

Robert Kappers
STEPTOE & JOHNSON LLP
227 W Monroe St. Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1300
Facsimile: (312) 577-1370

*Counsel for Appellant Transtex Inc. fka Transtex Composite Inc.*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. Cir. R. 32(a). This brief contains 8,672 words (including diagrams and images), excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), as counted by Microsoft® Word 2019, the word processing software used to prepare this brief plus the words counted in images.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2019, Times New Roman, 14 point.

Dated: December 1, 2020

*/s/ John Caracappa*

John Caracappa
Scott Richey
Bill Toth
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

Robert Kappers
STEPTOE & JOHNSON LLP
227 W Monroe St. Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1300
Facsimile: (312) 577-1370

*Counsel for Appellant Transtex Inc. fka Transtex Composite Inc.*